## CIRCUIT COURT OF THE CITY OF RICHMOND

Commonwealth of Virginia

v.

Charles Baker

June 7, 1989

Case No. LK-443-3

By JUDGE T. J. MARKOW

The petitioner, the Commonwealth of Virginia, ex rel. Edward J. Mazur, Comptroller, brought this petition of attachment against defendant, Charles Baker, alleging that defendant is indebted to the plaintiff in the sum of $21,600, with interest thereon at the legal rate from April 24, 1984, by virtue of the defendant's conversion of the plaintiff's property. The court took the petition under advisement and, upon consideration of the pleadings, oral argument, and the law, concludes that the petition is misconceived and should be denied.

A brief recitation of the facts in this case is in order.

As part of an investigation of persons dealing in stolen precious metals commenced by law enforcement authorities in the City of Richmond, an undercover operator sold jewelry containing precious metals to defendant, Charles Baker. The jewelry sold to Baker was previously stolen but was being held as unclaimed property by the Commonwealth pursuant to § 55-210.1. Prior to the controlled sale, the jewelry had been appraised at $21,600.

A concerned citizen (hereafter referred to as C.C.) was recruited to make the controlled sale. The C.C. made

it abundantly clear to Baker that the jewelry he sought to sell was stolen. The sale was effected and videotaped, and the police returned to Baker's store the next day with a search warrant but were unable to find the stolen jewelry. After obtaining possession, Baker had hidden the jewelry and then melted it down into nugget form and sold it to a local gold dealer.

Based upon these facts, Baker was found guilty by a jury of attempted grand larceny and conspiracy to commit grand larceny. He was sentenced to twelve months in jail and fined $1,000 on each count. The judgment order required that the defendant reimburse the Commonwealth the sum of $21,600, the appraised value of the precious metals. In compliance with the order, the defendant deposited jewelry from his business valued at $21,600 with the Clerk of the Circuit Court of the City of Richmond, the co-defendant herein.

The defendant noted an appeal of the judgment order; the sole issue on appeal was the invalidity of the judgment order requiring Baker to pay restitution when he was neither placed on probation nor given a suspended sentence. The Supreme Court of Virginia reversed the judgment order and ordered the trial court to return the $21,600 worth of jewelry to Baker upon his request.

Five days after the Supreme Court ordered the jewelry returned to Baker, the Commonwealth brought this petition for attachment alleging that under § 8.01-534(4) and (5) of the Code of Virginia, Baker had converted his property and his estate with intent to hinder, delay, or defraud his creditors.

The threshold issue in this case is whether a conversion actually occurred when the Commonwealth C.C. effected a controlled sale to Charles Baker.

The Supreme Court has defined conversion as "any wrongful exercise or assumption of authority, personally or by procurement, over another's goods, depriving him of their possession." *Buckeye National Bank v. Huff*, 114 Va. 1, 11, 75 S.E. 769, 772 (1912). Conversion is a tortious act and may arise either by wrongful taking of a chattel or by some other illegal assumption of ownership, by illegally using it or misusing it, or by wrongful detention. *Castell v. Stephenson Finance Co.*, 244 S.C. 45, 135 S.E.2d 311 (1964). Conversion also occurs upon transfer of posses-

sion of property to one not authorized by the owner of lawful possessor to receive the property. 18 Am. Jur. 2d *Conversion* § 38; Prosser on Torts at 96-98.

Applying these principles to the facts at bar, it is apparent that Baker's purchase of property that he knew was stolen constituted an illegal assumption of ownership and was an act of conversion. The fact that the Commonwealth staged the negotiations and authorized the use of unclaimed property to "sting" the defendant does not change the nature of defendant's act. The offering of the jewelry may have been an authorized act by the Commonwealth, but defendant's purchase of the property, knowing it to be stolen, was not authorized since it is unlawful to purchase stolen goods. Va. Code Ann. § 18:2-108. Defendant does not deny that the Commonwealth held an immediate right to possession of the jewelry as unclaimed property under Va. Code Ann. § 55-210.1. Baker then converted the jewelry "sold" to him by C.C. in the "sting" operation.

The only remaining issue is whether or not the Commonwealth has established a factual basis for judgment on its attachment under § 8.01-534(4) or (5) of the Code.

Section 8.01-534(4) and (5) of the Code states the grounds for issuance of an attachment. To prevail under either, petitioner must establish that defendant:

4. Is converting, is about to convert, or has converted *his property* of whatever kind, or some part thereof, into money, securities, or evidences of debt with intent to hinder, delay, or defraud his creditors;

or

5. Has assigned or disposed of or is about to assign or dispose of *his* estate, or some part thereof, with intent to hinder, delay, or defraud his creditors; (emphasis supplied)

It is self-evident that one cannot convert one's own property in the tortious sense of the word, since conversion implies an unauthorized or unlawful exercise of dominion over the property of another. The "conversion" referred to in § 8.01-534(4) is not a tortious conversion;

rather, it refers to the principle of equitable conversion; i.e., the exchange of property from real to personal or from personal to real. This second definition is the one contemplated by the statute since if the term "conversion" was meant to convey the sense of tortious misappropriation, surely the statute would not have used the language "his property," since a debtor cannot wrongfully exercise dominion over or "convert his property" but only the property of others. However, a debtor may convert *his property*, in the *equitable* sense of the word, by changing realty into personalty or personalty into realty, the latter practices being employed to circumvent a creditor's remedy.

Attachments are permitted to invalidate fraudulent transfers; however, the fraudulence of a transfer is based on a debtor's intent in regards to the transformation of property from real to personal and vice versa.

In this case, a conversion in the tortious sense of the word undoubtedly occurred when Baker purchased stolen jewelry; but there has been no evidence that Baker has sought to fraudulently transform personalty into realty or vice versa, or to convert any of his property into money, securities, or evidences of debt. Likewise, Section 8.01-534(5) of the Code has not been proved on these facts because no evidence has been introduced which would establish that Baker "has assigned or disposed of or is about to assign or dispose of his estate with intent to hinder, delay, or defraud his creditors." When Baker purchased stolen jewelry, hid it from a search by law enforcement officials, and then melted it down and sold it to another dealer, all these acts were unlawful acts that Baker effected over property *not his own*. The jewelry that Baker converted was never a part of Baker's estate, since Baker was not a bona fide purchaser and title never vested in him.

The jewelry currently being held by the Clerk of this court is the property of Baker. It is equally clear that the Commonwealth has a cause of action for conversion against Baker based on the fact that Baker wrongfully converted goods to which the Commonwealth had the right to possess. However, the statutory grounds for a writ of attachment have not been met on these facts since there is no evidence that Baker has converted *his own property*

or disposed of *his estate* with intent to hinder, delay, or defraud his creditors. All of the Commonwealth's allegations refer to actions Baker took over property he never owned. In *Allsbrook v. Azalea Radiator Serv., Inc.*, 227 Va. 600, 316 S.E.2d 743 (1984), the Supreme Court of Virginia held that allegations that a debtor transferred the property to a purchaser with intent to hinder, delay, or defraud its creditors was groundless where the debtor did not own the property, since the debtor could not transfer that which it never owned.

The Commonwealth has established a right but has misconceived its remedy.

Of course, the Commonwealth is free to establish upon other evidence that Baker's conduct meets the statutory criteria set forth in § 8.01-534 of the Code in regard to defendant's disposition of the jewelry currently held by the clerk of court. However, these are not issues before the court.